NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY LYNNE HUNTER | Civil Action No. 04-3269 (FLW) |
| Plaintiff | |
| v. | **MEMORANDUM OPINION** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant | |

Plaintiff Mary Lynne Hunter appeals from the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart (the "Commissioner"), denying her disability benefits under the Social Security Act (the "Act"). The Court has jurisdiction to hear the matter pursuant to 42 U.S.C. § 405(g). Plaintiff contends that the record, when considered in full, substantiates her claims and requires a conclusion that she was disabled commencing January 10, 2001 and is entitled to disability benefits. Specifically, Plaintiff maintains that the Administrative Law Judge, Irving A. Pianin (the "ALJ"), erred by failing to articulate a sufficient rationale as to the issue of whether or not Plaintiff's allegations of pain are credible. For the reasons stated below, the decision of the Commissioner is affirmed and Plaintiff's Complaint is dismissed in its entirety.

**I.     BACKGROUND**

Plaintiff alleges that she suffers from intense back pain that prevents her from holding gainful employment. Her back pain, which started around the birth of her last child in 1983, is caused by sciatica, degenerative disk disease, and arthritis in the spine. AR 52, 66. She claims that the pain makes it difficult for her to sit, stand, or walk for long periods. Id. at 66. While Plaintiff has not worked since filing for disability, she was previously employed as a teacher's aide, librarian and gym teacher at a private elementary school and worked for approximately four years as a convenience store clerk. Id. at 53.

**A.     Procedural history**

Plaintiff filed an application for disability on November 26, 2001, alleging that she was disabled due to a back disorder. Id. at 43-45. Her claim was rejected both initially and reconsideration was denied. Id. at 31-35, 37-39. She requested a hearing before an ALJ which took place on February 5, 2004. Id. at 15. In a February 18, 2004 decision, the ALJ determined that Plaintiff was not disabled under the Act from the period of January 10, 2001 to the time of the ALJ's hearing. Id. at 15-24. Plaintiff was represented by counsel during the ALJ hearing. Id. at 28, 42. Plaintiff subsequently petitioned the Social Security Appeals Council (the "Appeals Council") for review of the ALJ's decision. Id. at 11. The Appeals Council denied Plaintiff's petition on May 11, 2004, rendering the ALJ decision the final decision of the Commissioner. Id. at 6-9.

Plaintiff then filed a Complaint with this Court on July 9, 2004. The Complaint alleges that the decision of the ALJ failed to articulate a sufficient rationale as to the issue of whether or not Plaintiff's allegations of pain are credible. See Pl. Compl. at 2. On June 6, 2005, the Commissioner filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) alleging that the ALJ's

2

assessment of Plaintiff's credibility and subjective complaints of disabling pain was supported by substantial evidence. See Def. Br. at 9-12.

**B.     Medical evidence**

Plaintiff alleges that she has been disabled since January 10, 2001 because of progressively worsening back pain that prevents her from sitting, standing, or otherwise moving about for long periods of time. AR 240. According to Plaintiff, the pain began following the birth of her third child in June 1983. Id. at 59. At that time, Plaintiff believed the pain was part of the effects of the caesarian procedure used to deliver her child. Id. Plaintiff contends that the pain became progressively worse over the next 15 to 20 years, but she is unclear about the nature of her symptoms during this time. Id. The record does not indicate that Plaintiff took any medication or sought medical treatment from a doctor for her pain during 1983-1999.

In 1990, after many years as a stay-at-home mother, Plaintiff began working at a small Catholic school. Id. at 53. She was initially hired as a gym teacher, but she worked for the school in various capacities between 1989 and 1995. Id. at 53, 91. Plaintiff was a teacher's aide and a librarian during her tenure at the school. Id. According to Plaintiff, her gym teacher position involved carrying around 10 pounds of gym equipment, up to 100 feet, for two days a week. Id. at 74. Plaintiff also claims that the position involved upwards of four hours of standing per day and two hours of stooping. Id. Plaintiff further states that her activity level as a teacher's aide consisted of only two hours of standing and two hours of sitting throughout the day. Id. at 75. While serving in the capacity of school librarian, Plaintiff was responsible for shelving books - a task that required her to stoop, kneel, and crouch occasionally throughout her work. Id. at 76. In helping the students, Plaintiff stood for an hour and sat for three hours during her work day. Id. In 1995, Plaintiff left her

job at the school for unspecified reasons. Id. at 53, 91.

In 1995, Plaintiff began work as a cashier/clerk at a Heritage Dairy Store, part of a chain of convenience stores. Id. at 53, 91. As part of her responsibilities, she manned the cash register and check-out counter, stocked shelves, took food and lunch meat orders, and cleaned the store. Id. at 53, 97. Plaintiff claims that she suffered back pain during her work at Heritage and took time off in March 1999 because of the pain. Id. at 52. Plaintiff alleged in her disability filing that she was in "such pain that [she] couldn't stand up." Id. At that time, Plaintiff saw Dr. Donald Kudren, her family doctor, who proscribed various painkillers.[1] Id. at 52, 54. Plaintiff returned to work at Heritage, but quit on July 18, 1999 because the "[w]orkplace became chaotic and disorganized due to a change in management." Id. at 54. Plaintiff made no mention of her back condition as a factor in leaving her position.

In April 2000, due to worsening back pain, Plaintiff visited both her family doctor and her gynecologist, Dr. Apetz. Id. at 54, 59. Plaintiff was proscribed painkillers by Dr. Kudren and sent for blood work by Dr. Apetz. Id. However, Plaintiff waited until January 10, 2001 to obtain the blood work, at which time she was told she had sciatica. Id. After several visits to doctors at the Riverfront Medical Center and Underwood Hospital, on July 12, 2001, Plaintiff was proscribed Oxycontin (a pain killer) and Soma (a muscle relaxer) to combat her back pain. Id. at 155. At the time of the ALJ hearing on February 5, 2004, Plaintiff was still taking Oxycontin and Soma. Id. at 235. According to the record, Plaintiff has told several doctors that the medication alleviates her back pain, but that it gives her headaches. Id. at 67, 72, 134.

---

[1] While Plaintiff's visit to Dr. Kudren is recorded in Plaintiff's disability report, see AR 54, Dr. Kudren's report itself is not in the Administrative Record.

On August 2, 2001, Plaintiff had a lumbar spine x-ray, which revealed degenerative disc disease. Id. at 116. As a result of the x-ray, Plaintiff was referred by her personal doctors to a spine specialist, Dr. Evan O'Brien, who reviewed the x-ray and agreed with the degenerative disc disease diagnosis. Id. at 206-207. Dr. O'Brien also suggested that Plaintiff needed a lumbar MRI to further determine the problem. Id. Plaintiff indicated to him, and has since indicated, that she cannot afford an MRI because she does not have health insurance. Id. at 206-207, 240.

On May 29, 2002, Plaintiff was examined by Dr. Ted Gallagher at the request of the state claims adjudicator. Id. at 121-122. Dr. Gallagher determined that Plaintiff suffered from severe chronic back pain, but was "a well-developed, well-nourished ... female in no acute distress." Id. Dr. Gallagher also found no significant restrictions on Plaintiff's range of motion and noted that Plaintiff did not have muscle weakness or difficulty walking. Id. However, he concluded that it was "very difficult" for Plaintiff "to hold competitive employment." Id. at 122. On July 3, 2002, at the request of the Government, Dr. Howard Goldbas prepared Plaintiff's residual functional capacity report. Id. at 125-132. The report concluded that Plaintiff could frequently lift 10 pounds and occasionally lift up to 20 pounds, as well as having unlimited ability to push or pull. Id. at 126. The report also concluded that Plaintiff could stand and/or walk or sit for a total of 6 hours in an 8-hour workday. Id.

On August 8, 2002, at the request of the Government, Plaintiff was given a mental status examination by Dr. Kenneth Goldberg. Id. at 134-138. Although Dr. Goldberg concluded that mental health issues did not contribute to Plaintiff's back pain, he noted that Plaintiff described her own mood as vacillating. Id. at 135. He wrote in his report that Plaintiff stated that she could feel "great one moment and then dismal the next." Id. at 136. Dr. Goldberg further observed that

5

Plaintiff walked quite fast despite her allegations of pain.  Id.  Dr. Goldberg concluded that Plaintiff's mental health would improve if she got out of the house and worked at a job.  Id.

Plaintiff describes her lower back pain as continuous.  Id. at 66.  According to Plaintiff, the pain is "excruciating," "aching," and "stabbing."  Id.  Plaintiff claims that the pain prevents her from bending to open the oven door, vacuuming, scrubbing floors, lifting laundry baskets, or doing other household chores.  Id.  At the alleged start date of her disability, Plaintiff lived with her husband, from whom she is now separated, her son, her daughter and son-in-law, her grandson, and her brother.  Id. at 81.  Despite her allegations of pain, Plaintiff states that she cooks all family meals, and only needs some help with handling the oven rack, heavy pots and pans.  Id. at 82.  Furthermore, Plaintiff claims that she dusts, washes dishes, and does laundry, even though she alleges that she cannot lift heavy laundry baskets or clean the kitchen floor on her hands and knees.  Id.

Plaintiff has also been diagnosed with attention deficit disorder and depression for which she has been proscribed medication.  Id. at 134-138, 241.  She was first diagnosed with attention deficit disorder while visiting a doctor with her child, who was receiving help for the same condition.  Id. at 134, 241.  Dr. Goldberg confirmed that diagnosis during his mental health evaluation of Plaintiff.  Id. at 241.  The record shows that Plaintiff has taken Adderall, Paxil, and Wellbutrin in the past, but does not take any such medication now because of the cost of prescription drugs.  Id. at 90, 235.  In addition, Plaintiff had previously taken Atvian, a prescription-strength sleep aid.  Id. at 90.

During the ALJ hearing, Gary Young ("Young"), a vocational expert, classified Plaintiff's position as a teacher's aide as semi-skilled and light, and her job as a stock clerk as semi-skilled and heavy.  Id. at 246.  Young testified that an individual of Plaintiff's age, educational background and work experience who was capable of performing light work, "provided that it does not require more

6

than occasional postural activity," id., would be able to perform a teacher's aide position. Id. Young further testified that someone with Plaintiff's profile would be able to perform "all unskilled work," id. at 247, including positions as an office helper and cashier. Id. Based on the assumption that Plaintiff's testimony about her physical limitations was credible, Young indicated that someone like Plaintiff would not be able to engage in full-time, sedentary work. Id. at 247. Young did not specifically state that such person would be preventing from all work, or even part-time work at a sedentary level. Id.

## II.   DISCUSSION

### A.   Standard of review

The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir.2000). Sentence four of § 405(g) provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir.2001). On the issue of whether there is substantial evidence to support a decision, this Court's review is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir.2004). However, it is the duty of the Court to scrutinize the entire record to determine whether the Commissioner's findings are rational and supported by substantial evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.1978) (emphasis added). Substantial evidence is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir.2004). "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel,

186 F.3d 422, 427 (3d Cir.1999).  Therefore, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir.1986).

**B.      Standard for entitlement of benefits**

Disability insurance benefits may not be paid under the Act unless the plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  A plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "[her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Act establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-47 n.5.

Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Id. A claimant who does not have a severe impairment is not disabled. 20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that her impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied her burden of proof and is automatically entitled to benefits. See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether she retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(d); Bowen, 482 U.S. at 141. If the claimant is able to perform her previous work, the claimant is determined not to be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

**C.     Decision and findings of the ALJ**

Here, the ALJ determined that Plaintiff has not established step three, that her physical limitations meet or medically equal the criteria of any impairment in the Impairment List. The ALJ further found that Plaintiff was able to perform both her past relevant work and work available in the national economy. After careful consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of the decision.
2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
3. The claimant's back disorder is a severe impairment based upon the requirements in the Regulations (20 C.F.R. § 404.1520(c)).
4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
6. The claimant retains the residual functional capacity to perform the exertional demands of light level work, or work which requires maximum lifting of twenty pounds and frequent lifting of ten (20 C.F.R. §404.1567). She can only occasionally climb, balance, stoop, kneel, crouch, or crawl. She must avoid hazards such as machinery and heights, and environmental extremes.
7. The claimant retains the residual functional capacity to return to past work as a teacher's aide. This position, as it is generally performed throughout the national economy, does not require the performance of work activities precluded by her medically determinable limitations (20 C.F.R. § 404.1565).
8. The claimant is a younger individual between the ages of 45 and 49 (20 C.F.R. § 404.1563).
9. The claimant has a high school (or high school equivalent) education (20 C.F.R. § 404.1564).
10. Transferability of skills is not an issue in this case (20 C.F.R. § 404.1568).
11. The claimant has the residual functional capacity to perform a significant range of light work (20 C.F.R. § 404.1567).
12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are significant number of jobs in the national economy that she could perform.

> 13. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of [the ALJ's] decision (20 C.F.R. § 404.1520).

[AR at 22-23].

On May 11, 2004, the ALJ's decision became the final decision of the Commissioner when Plaintiff's petition for review to the Appeals Council was denied. Id. at 6-9.

**D.  Plaintiff's claims on appeal**

On appeal, Plaintiff argues that the ALJ failed to articulate a sufficient rationale as to why Plaintiff's allegations of pain were not credible. Pl. Br. at 9. The Court notes that Plaintiff does not specifically appeal the ALJ's finding that Plaintiff's condition did not meet the criteria of an impairment set forth in the Impairment List. See Pl. Reply at 1. Plaintiff further argues that since the ALJ failed to consider Plaintiff's allegations of pain, the ALJ erred in his residual functional capacity determination and subsequent past relevant work and other work determinations. Pl. Br. at 9-12.

**E.  The ALJ's determination that Plaintiff's allegations regarding her limitations were not credible is supported by substantial evidence.**

An ALJ's conclusion must be accompanied by a clear and satisfying explanation of the basis on which it rests. Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir.2001) (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981)); see Burnett v. Commissioner, 220 F.3d 112, 119-21 (3d Cir.2000). Therefore, a mere summary conclusion that a plaintiff's impairments did not meet or equal any listed impairments without a discussion of the relevant listed impairments, the medical evidence, or an explanation of the ALJ's reasoning is insufficient. Burnett, 220 F.3d at 119-21.

In step four of the five-step process, the ALJ was required to determine whether Plaintiff retained the residual functional capacity to perform past relevant work. See 20 C.F.R. § 1565.

Because the ALJ determined that Plaintiff retained the capacity to return to her past relevant work, it was unnecessary to determine whether there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.  The ALJ based his finding that Plaintiff retained the residual functional capacity to return to her past previous employment on the evidence in the record and his finding that Plaintiff's allegations of pain were not credible.  See AR at 18-21.  The Court examines the ALJ's decision only with regard to whether there was substantial evidence to determine whether or not Plaintiff's allegations of pain were credible.

Allegations of pain that limit functional capacity must be supported by objective evidence.  20 C.F.R. § 404.1529(a).  Such objective evidence refers to medical signs and laboratory findings from medical professionals that explain allegations of pain.  20 C.F.R. § 404.1529(b).  If the ALJ finds that objective evidence in the record could reasonably explain a plaintiff's symptoms, the ALJ must weigh the evidence and the plaintiff's allegations to determine the extent of the pain and how it limits the plaintiff's ability to work.  20 C.F.R. § 404.1529(c)(1).  "This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.1999) (citation omitted).  The ALJ is guided in this analysis by 20 C.F.R. § 404.1529(c)(4) and Social Security Ruling 96-7P (1996).  20 C.F.R. § 404.1529(c)(4) states the specific facts considered by the Commissioner in this determination:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled.  We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to

symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

[20 C.F.R. § 404.1529(c)(4)].[2]

In this matter, the record demonstrates that the ALJ considered these factors in determining that Plaintiff's allegations of pain were not entirely credible.

First, the ALJ examined inconsistencies in the record and potential conflicts between Plaintiff's statements and the rest of the evidence. For example, during the ALJ hearing, Plaintiff claimed that she needed to take an Oxycontin pill to get out of bed, could not cook beyond using the microwave, could not lift more than a gallon of milk, and could not sit in one position for more than 10 or 15 minutes. See AR 236-238. However, the ALJ correctly points out that Plaintiff's testimony is inconsistent with the record. The record does not indicate that Plaintiff's condition required any hospitalization, significant medical treatment, or significant office care other than for routine

---

[2] Similarly, SSR 96-7p recognizes several factors in determining whether allegations of pain are credible, including:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

[SSR 96-7P, 1996 WL 374186 (S.S.A.) (1996)].

maintenance. Moreover, there is no evidence that there have been significant increases or changes in Plaintiff's prescribed medication. Dr. Gallagher's evaluation indicated that Plaintiff did not demonstrate any significant restriction of range of motion and that she can walk at a reasonable pace. Id. at 123-124. Dr. Goldbas' residual function test concluded that Plaintiff can stand or sit about 6 hours in an 8-hour workday. Id. at 126.

This Court defers to an ALJ's determination of credibility since the ALJ has the opportunity to assess the witness's demeanor at a hearing. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003) (citation omitted). Here, the ALJ's credibility determination of Plaintiff was not based solely on objective medical findings; the ALJ also considered the testimony of Plaintiff during the hearing. The record indicates that Plaintiff's statements in her Daily Living Questionnaire contradict her testimony. For instance, Plaintiff stated during her testimony that she only cooks meals using the microwave. Id. at 237. However, in her disability application, Plaintiff claims that she cooks all meals for the family, although on some days, she needs help opening the oven door and pulling out the oven rack. Id. at 82. Plaintiff also admits to engaging in some level of physical activity as she states that she dusts, washes dishes, and does laundry in the house. Id. Plaintiff does not have a driver's license, but she can get herself around and live independently. Id. In fact, Plaintiff claims that she is "physically able to travel alone." Id.

Plaintiff attributes these inconsistencies in the record to a progressively worsening back condition. However, there is no objective evidence to support Plaintiff's assertion that her back pain is progressively worsening. Nor is there any objective medical evidence to suggest that Plaintiff needs back surgery. At the time of the ALJ hearing, Plaintiff was not in any specific physical treatment or therapy for her pain. Dr. O'Brien suggested a lumbar MRI, but only as a determination

as to how to further treat Plaintiff. Id. at 207.  While Plaintiff claims that her pain medication confirms her allegations of pain, the ALJ correctly points out that there is no evidence of any significant increases or changes in Plaintiff's prescribed medications reflective of an uncontrolled condition.  Id. at 19.  Moreover, although Plaintiff has self-prescribed an increased dosage of Oxycontin, there is no evidence that Plaintiff took such dosage because of the increase in her back pain.  Id. at 234-35; 248-49.

    The record also does not indicate that Plaintiff is incapable of performing her past relevant work as a teacher's aide or other work that exists in significant numbers in the national economy. There is no evidence that any of Plaintiff's treating physicians determined that Plaintiff is incapable of performing light work activity.  While Plaintiff relies on Dr. Gallagher's comment that it would be difficult for a person in Plaintiff's position to hold competitive employment, see Pl. Br. at 10, Dr. Gallagher's report does not present any medical evidence that Plaintiff cannot, in fact, return to her past relevant work or other work existing in the national economy.  Moreover, although the vocational expert testified that someone with Plaintiff's physical limitations would not be able to sustain full-time, sedentary work, the expert noted that Plaintiff would be able to work as a teacher's aide.  Moreover, the expert's statement regarding Plaintiff's inability to engage in full-time, sedentary work was specifically based on the assumption that Plaintiff's testimony of pain was credible.  Here, the totality of the evidence, including Plaintiff's responses to the ALJ's questions during the hearing, supports the ALJ's determination that Plaintiff's complaints of pain were less than credible.  For example, the record shows that the ALJ posed the appropriate questions to Plaintiff that would enable him to make a reasoned credibility determination.  During the hearing, the ALJ asked Plaintiff to describe her pain, her daily activities and limitations, how much she can

lift, how far she can walk and how long she can sit or stand.  Id. at 235-40.  Further, the ALJ observed that the medical evaluations by Plaintiff's physicians did not support her subjective complaints of pain, as none of her doctors opined that Plaintiff was either unable to work or incapacitated to the degree she had claimed.  Considering cumulatively the inconsistencies and the other relevant record evidence, the Court concludes that substantial evidence supports the ALJ's adverse credibility finding.

### III.     CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence in the record.  Therefore, the ALJ's decision will be affirmed, Plaintiff's Complaint shall be dismissed in its entirety, and the Commissioner's motion for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is granted.  The Court shall issue an appropriate order.


Date:  July 6, 2005                                                       /s/   Freda L. Wolfson
                                                                           Honorable Freda L. Wolfson
                                                                           United States District Judge